IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| IN THE MATTER OF THE SEARCH OF BODY OF:<br><br>QUADIR RASHAD MCKINNON<br>B/M DOB: 08/XX/1990<br><br>FOR TWO BUCCAL SWABS CONTAINING DEOXYRIBONUCLEIC ACID (DNA) | Case No. 3:23sw34<br><br>**Filed Under Seal** | <br>Feb 17 2023 |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Davis B. Gooding, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search warrant authorizing the search of Quadir Rashad MCKINNON (B/M DOB: 08/XX/1990), currently an inmate at Riverside Regional Jail 500 Folar Trail in North Prince George, VA 23860, in the Eastern District of Virginia, for a DNA sample. If so authorized, I will utilize two sterile buccal swabs provided by the ATF to collect a saliva sample from the mouth of MCKINNON under sanitary conditions and according to accepted medical practices.

2. I am a Task Force Officer (TFO) with the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since July 2021. As a TFO, I am authorized to investigate violations of the laws of the United States and am currently engaged in numerous criminal investigations involving violations of federal law. I am a law enforcement officer with authority to execute arrest and search warrants under the authority of the United States. *See* 18

U.S.C. § 3051. I am also a duly sworn Special Agent of the Virginia State Police (VSP) Bureau of Criminal Investigation, Drug Enforcement Section, Richmond Field Office, and have been so employed since March 2012.  I completed the Virginia State Police Basic Law Enforcement Training and more than one year of on-the-job training with the ATF Violent Crime Reduction Task Force in Richmond, Virginia, which included instruction on investigating federal crimes involving firearms, narcotics, arson, and explosives. Since 2012, I have received further training and experience in interviewing and interrogation techniques, arrest procedures, search and seizure, search warrant applications, and narcotics and various other crimes.  I am currently assigned to the ATF Washington Field Division, Richmond Group I.

3. During my employment with VSP, I have conducted and/or participated in numerous investigations involving unlawful activities, including the investigation of gangs/criminal enterprises, narcotics trafficking, firearm offenses, and violent crimes. I am principally involved in narcotics and narcotics-related investigations, including narcotics investigations related to violent offenses, which often involve the criminal use of firearms. From my training and experience, I have become familiar with the methods and techniques utilized by illegal drug traffickers and drug trafficking organizations (DTOs).

4. From 2008 to 2012 I worked as a uniformed patrol officer for the Hanover County Sheriff's Office where I responded to law enforcement calls for services, investigated crimes, made arrests, and testified in court.  I also received training and experience in this capacity on interviewing and interrogation techniques, arrest procedures, search and seizure, search warrant applications, and narcotics and various other crimes.

5. I am also an infantry officer in the United States Marine Corps and am currently serving as a reservist.  I started my employment as a United States Marine Corps officer in May

2004.  While serving in this capacity I have been trained and received extensive experience in the functioning, handling, and use of firearms, ammunition, and explosives. During my most recent oversees deployment I was employed as the leader of a security cooperation team in Honduras and greater Central America.  There, I was trained and received extensive experience in Counter Transnational Organized Crime operations, thus becoming intimately familiar with large scale criminal, narcotics, firearms, and explosive traffickers and organizations.

6.The facts in this affidavit come from my personal observations, my training and experience, documentations, law enforcement databases, and information obtained from other sworn law enforcement officers and/or witnesses.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter.

## PURPOSE OF AFFIDAVIT

7.I am submitting this affidavit for the purpose of establishing probable cause in support of the search of the person of MCKINNON, and the seizure of saliva from MCKINNON for the purpose of analyzing the saliva for Deoxyribonucleic Acid ("DNA") and comparing same to DNA samples found during the course of a criminal investigation.  I believe that I have probable cause to conclude that such DNA is evidence of a crime pursuant to Rule 41(c).

8.In particular, the person is described as Quadir Rashad MCKINNON, with the date of birth: 08/XX/1990. MCKINNON is a black male, approximately 5'6" in height, and approximately 130 pounds in weight.  MCKINNON is currently an inmate at Riverside Regional Jail 500 Folar Trail in North Prince George, VA 23860, in the Eastern District of Virginia.

9.Based on my training and experience, I know DNA is often left behind on physical items previously possessed or touched by a particular individual. When an individual

comes in physical contact with another item, that individual's DNA is commonly transferred to that other item. This is especially true when dealing with items that come in contact with portions of the body that secrete fluids, such as the mouth or hands. In other words, DNA evidence can be useful, admissible evidence in demonstrating that a particular person at one time was in possession of a particular piece of evidence.

10. The collection of the DNA samples will be accomplished in a manner that is minimally intrusive and poses no risk of harm to MCKINNON. Specifically, I, or another law enforcement official, will obtain MCKINNON'S DNA by inserting two buccal (oral) swabs into his mouth and running each swab along his cheeks and the inside of his lip.

## PROBABLE CAUSE

11. The United States, including ATF Richmond I, is conducting a criminal investigation of Quadir Rashad MCKINNON, Eric Michael VAUGHAN JR., and Isaiah JOHNSON regarding possible violations of 21 U.S.C §§ 841(a)(1)-possession with intent to distribute controlled substances, distribution of controlled substances, 21 U.S.C. § 846-conspiracy to distribute controlled substances, 18 U.S.C. § 924(c)-possession of a firearm in furtherance of a drug trafficking crime, and/or violations of 18 U.S.C. § 922(g)-felon in possession of a firearm.

12. MCKINNON has numerous felony convictions, including the following:

  a. April 11, 2012: guilty of possession with intent to distribute schedule I or II narcotics (Hopewell)

  b. April 11, 2012: guilty of possession of a firearm while possessing schedule I or II narcotics (Hopewell)

  c. September 4, 2019: guilty of possession of a firearm by a convicted felon (Hopewell)

    d. September 4, 2019: guilty of felony distribution of marijuana (Hopewell)

    e. September 4, 2019: guilty of felony possession of schedule I or II narcotics (Hopewell)

    f. March 4, 2020: guilty of felony distribution of marijuana (Hopewell)

    g. March 4, 2020: guilty of felony selling schedule I or II narcotics (Hopewell)

    h. MCKINNON has been found guilty of four additional felony probation violations and currently is on indefinite supervised state probation.

13. On December 19, 2022, I, along with VSP and ATF, executed a state search warrant for room 132 of the Roadway Inn, 4911 Oaklawn Boulevard in Hopewell, VA 23860, where prior investigation had revealed MCKINNON and his associates—including JOHNSON and VAUGHAN—to be selling narcotics and possessing firearms. I also obtained a state arrest warrant for MCKINNON for the distribution of schedule I/II narcotics.

14. JOHNSON and VAUGHAN were present in room 132 at the time of the execution of the search warrant. JOHNSON was hiding inside of room 132's closet. MCKINNON was not present for the execution of the search warrant. Law enforcement later learned that MCKINNON went to a nearby residence prior to the execution of the search warrant. Multiple firearms, U.S. currency, multiple cell phones, digital scales, packaging supplies, cutting agents, and distribution amounts of suspected powdered cocaine, crack cocaine, fentanyl, marijuana were also recovered from room 132.

15. JOHNSON was released following the search warrant pending further investigation and charges. VAUGHAN was arrested due to outstanding warrants for multiple felony probation violations. MCKINNON remained at large for the outstanding narcotics distribution warrant until his arrest on January 18, 2023.

16. During surveillance on January 18, 2023, I observed MCKINNON driving a black Hyundai rental car in Hopewell, Virginia, in the Eastern District of Virginia. I followed the Hyundai to Riverview Park Apartments (in Hopewell, Virginia), where MCKINNON backed into a parking space. While the vehicle was stationary, I, along with other law enforcement officers, approached the vehicle. MCKINNON was in the driver's seat and VAUGHAN, who I later learned had been released on bond the day prior, was the front seat passenger. In the center console, in plain view, was a loaded 9mm Springfield Armory semi-automatic pistol.

17. When I removed MCKINNON from the vehicle, a multicolored backpack containing multiple ounces of suspected powder and crack cocaine, scales, and baggies, located on the driver's side floorboard, became tangled in his feet. In my training and experience, the amount of suspected narcotics and associated contents recovered from the multicolored backpack were indicative of the distribution of narcotics. MCKINNON also had approximately $2,165 (cash) in his pocket. In the driver's side door were approximately a dozen lottery tickets, which I know from training and experience to be used to package heroin and/or fentanyl for sale. Also found on the driver's side, where MCKINNON sat, were two cell phones: one Apple iPhone in a black case (found on the driver's side floorboard near the multicolored backpack) and one Android cell phone in a silver case (found on the driver's seat).

18. VAUGHAN had multiple grams of suspected powder and crack cocaine in one pocket (packaged in a clear plastic baggie that contained multiple other clear plastic baggies containing the suspected narcotics) and $190 (cash) in his other pocket. In the passenger side door were another approximate dozen lottery tickets. In my training and experience, the amount of narcotics possessed by VAUGHAN, along with their packaging, did not indicate personal use, but rather, distribution.

19. From the floorboard under the front of the passenger seat I recovered a loaded Ruger Security 9mm semi-automatic pistol with an extended magazine. The Ruger was loaded with one round in the chamber and nine rounds in the magazine. The safety was off. In the passenger seat cushion, I found one loose 9mm hollow point round. This round was visibly different from the rounds loaded in the Springfield and the Ruger.



*Picture of the Ruger Security 9mm (under the front of the passenger seat) and the 9mm hollow point round (in the passenger seat cushion).*

20. In a post-Miranda statement, MCKINNON stated the following:

a. That the Hyundai was rented to a woman, S.B., that S.B. is VAUGHAN's girlfriend, and that he borrowed the Hyundai from S.B. that day;

b. That he is a convicted felon;

c. That the Springfield, the multicolored backpack, and the suspected narcotics in the multicolored backpack belonged to him, and that nothing in the car is VAUGHAN's;

d. That he did not know about the Ruger recovered from under the front of the passenger seat;

e. That the drugs and guns recovered from the Roadway Inn on December 19, 2022 did not belong to him;

    f.   That he does not sell narcotics;

    g.   That he obtains his drugs from someone known as "H.O." (but that he doesn't know "H.O.'s" number); and

    h.   That he bought the Springfield from someone known as "T."

21.    In a post-Miranda statement, VAUGHAN claimed ownership of the suspected narcotics found on his person but denied possession/knowledge of either of the firearms in the vehicle. He also denied knowledge of the loose 9mm hollow point round in his seat. He stated he did not know who rented the Hyundai. He stated he was high during the arrest. VAUGHAN also stated he is a drug user, not a dealer, and that he had been released from jail the previous day.

22.    The Ruger Security 9mm semi-automatic pistol found under the passenger side seat was determined to have been manufactured outside of the Commonwealth of Virginia and therefore each had traveled in interstate commerce prior its recovery on January 18, 2023.

23.    There is probable cause to believe MCKINNON possessed the Ruger for at least the following reasons:

    a.   MCKINNON was seated in close proximity (driver's seat) to the Ruger (underneath the front of the passenger seat), and therefore the Ruger was readily accessible to MCKINNON; and

    b.   Prior investigation has linked MCKINNON and VAUGHAN as associates in a suspected drug trafficking organization, and both MCKINNON and VAUGHAN possessed distribution amounts of narcotics at the time of the arrest. There were also

materials recovered from the Hyundai that I know, in my training and experience, indicate the sale of narcotics (like a scale and lottery tickets). I know, in my training and experience, that individuals who engage in the sale of narcotics often possess firearms to protect themselves and their narcotics. Therefore, it is more likely than not that MCKINNON and VAUGHAN had joint access and control over the Ruger.

## **CONCLUSION**

24.     Based on the foregoing, there is probable cause to believe that MCKINNON, knowing he was previously convicted of a crime punishable by a term of incarceration exceeding one year, possessed the firearm described above, which traveled in interstate commerce, in violation of 18 U.S.C. § 922(g)(1). Therefore, there is probable cause to issue a warrant authorizing law enforcement to obtain a buccal swab containing MCKINNON'S DNA because there is a fair probability that the Ruger will have his DNA on it. The Ruger has been swabbed for DNA, and the government plans to conduct a comparison upon receipt of MCKINNON's DNA.

Respectfully submitted,

*Davis Gooding*

Davis B. Gooding
Task Force Officer
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Sworn and subscribed to before me by telephone on
February 17, 2023.

_____ /s/ MRC_____
HON. MARK R. COLOMBELL
United States Magistrate Judge
Eastern District of Virginia
Date:  February 17, 2023.

## ATTACHMENT A

### Description of Person to be Searched

The body of QUADIR RASHAD MCKINNON, DOB: 8/XX/1990, black male. MCKINNON is currently an inmate at Riverside Regional Jail 500 Folar Trail in North Prince George, VA 23860, in the Eastern District of Virginia.

## ATTACHMENT B

### Particular Things to be Seized

I. Deoxyribonucleic Acid material, "DNA," of QUADIR RASHAD MCKINNON, obtained through the use of a buccal swab from the person of:

QUADIR RASHAD MCKINNON

Male

Date of Birth: 08/XX/1990